**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**HENESSEY FOOD CONSULTING LLC,**

<b>Plaintiff,</b>

<b>v.</b>                                              **5:20-CV-806**
                                                                                **(FJS/TWD)**

**PRINOVA SOLUTIONS, LLC,**
**f/k/a PRINOVA US LLC,**

<b>Defendant.[1]</b>

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **HARRIS BEACH, PLLC** | **JAMES R. MULDOON, ESQ.** |
| 333 West Washington Street | **STEVEN P. NONKES, ESQ.** |
| Suite 200 | |
| Syracuse, New York 13202 | |
|       -and- | |
| 99 Garnsey Road | |
| Pittsford, New York 14534 | |
| Attorneys for Plaintiff | |
| | |
| **LAW OFFICE OF MARK. R.** | **MARK RANDOLPH MYERS, ESQ.** |
| **MYERS, LLC** | |
| P.O. Box 503 | |
| Storrs Mansfield, Connecticut 06268-0503 | |
| Attorneys for Plaintiff | |
| | |
| **MOSES & SINGER LLP** | **DAVID A. LACKOWITZ, ESQ.** |
| 405 Lexington Avenue | |
| 12th Floor | |
| New York, New York 10174 | |
| Attorneys for Defendants | |

---

[1] The parties agree that the caption improperly refers to "Prinova Solutions LLC f/k/a Prinova US LLC" as one defendant, whereas the body of the complaint correctly identifies both Prinova entities as co-defendants. *See* Dkt. No. 10-1 at 29; Dkt. No. 13 at 7. Therefore, the Court grants Plaintiff's request and orders the Clerk to change the caption to reflect this. *See* Dkt. No. 13 at 8.

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

Plaintiff, a company that specializes in delaying browning in fresh-cut produce, commenced this action against Defendant Prinova Solutions, LLC and Defendant Prinova US LLC (collectively referred to as "Defendants"), asserting causes of action for misappropriation of trade secrets, breaches of contract, breaches of the covenant of good faith and fair dealing, unfair competition, unjust enrichment, and tortious interference with prospective business relations. *See* Dkt. No. 1, Compl., at ¶¶ 1, 3.[2]

Plaintiff's owner and president, Jeremy Dygert, created an antioxidant solution that prevents produce, including fresh-cut fruit, from browning, which is allegedly significantly better than other products on the market; and he sought to keep the formula secret. *See id.* at ¶¶ 3, 29-34. Plaintiff contends that it uses suppliers to blend the ingredients to make the products according to Plaintiff's specifications, those products are delivered to Plaintiff, and then Plaintiff sells the products directly to food manufacturers. *See id.* at ¶ 25. According to Plaintiff, Defendants manufacture and sell food-related ingredients; and, in 2018, Plaintiff contracted with Defendants to obtain raw ingredients for, blend, and package its antioxidant solution, as well as deliver the products to Plaintiff. *See id.* at ¶¶ 26-27. To assist Defendants

---

[2] Throughout the parties' moving papers, they refer to Defendants' conduct collectively and do not distinguish between each specific entity's role in the causes of action. At this time, the Court declines Defendants' request to order Plaintiff to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). However, the Court cautions Plaintiff that, following discovery, it will have to specify which cause of action pertains to which defendant.

in fulfilling the agreement, Plaintiff disclosed its product formula and information about its customers, potential customers, customers' requirements, and market information to Defendants.  *See id.* at ¶¶ 53-54.

As part of the negotiations, the parties signed a supply agreement and a confidentiality agreement.  *See id.* at ¶¶ 38, 48; *see also* Dkt. No. 10-3, 2018 Supply Agreement; Dkt. No. 10-4, 2018 Mutual Confidentiality Agreement.  These agreements precluded Defendants from disclosing confidential information or trade secrets except for the purpose of conducting the agreed-upon work.  *See* Dkt. No. 1 at ¶¶ 39-43, 49-50.  Nevertheless, Plaintiff alleges that Defendants used Plaintiff's trade secret information, including its product formula and customer information, to create the same or substantially similar antioxidant products and marketed those products to Plaintiff's customers and potential customers in direct competition with Plaintiff. *See id.* at ¶¶ 28, 55-75.

Plaintiff then commenced this action against Defendants alleging the following nine causes of action:

(1) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*;

(2) misappropriation of trade secrets under New York law;

(3) breach of contract with respect to the 2018 supply agreement;

(4) breach of the covenant of good faith and fair dealing with respect to the 2018 supply agreement;

(5) unfair competition;

(6) unjust enrichment;

(7) breach of contract with respect to the mutual confidentiality agreement;

(8) breach of the covenant of good faith and fair dealing with respect to the mutual

confidentiality agreement; and

(9) tortious interference with business relations.

*See id.* at ¶¶ 76-213.

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint in its

entirety.  *See* Dkt. No. 10.  Plaintiff opposes the motion.  *See* Dkt. No. 13.


## II. DISCUSSION

### A.  Motion to dismiss standard

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the court must accept the material facts alleged in the complaint as true and

draw all reasonable inferences in the plaintiff's favor."  *LMC Indus. Contrs. v. Dominion Energy*

*Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3

(N.D.N.Y. Aug. 24, 2021) (Scullin, J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l*

*Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required

to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127

S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed.

2d 929).  Therefore, under this standard, a plaintiff must support its claims with sufficient

factual allegations to show "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [its] claims' . . .

'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680

(quoting [*Twombly*, 550 U.S. at 570]).

### B.  Whether Plaintiff is the correct party to the agreements

Defendants initially contend that the Court should dismiss Plaintiff's contract claims

because Plaintiff (Henessey Food Consulting LLC) is not a party to any of the written

agreements; and, therefore, it lacks standing to enforce the agreements.  *See* Dkt. No. 10-1,

Defs' Memorandum in Support, at 14.  According to Defendants, non-party Henessey Foods

LLC executed the mutual confidentiality agreement, and non-party Hennessy Foods, LLC

executed the 2018 and 2019 supply agreements.  *See id.*  Plaintiff responds that the differences

between its official name and the name stated in the parties' contracts is minor, and it does not

void the contracts.  *See* Dkt. No. 13, Pl's Memorandum in Opposition, at 8.

"Under New York law, a contract entered into by a corporation under a 'colloquial title' is

enforceable by either party, and 'the misnomer is held unimportant.'"  *Spanierman Gallery, PSP*

*v. Love*, 320 F. Supp. 2d 108, 111 (S.D.N.Y. 2004) (quoting *Mail & Express Co. v. Parker*

*Axles, Inc.*, 204 A.D. 327, 198 N.Y.S. 20, 21 (App. Div. 1st Dep't 1923)) (other citations

omitted); *see McGary v. People*, 45 N.Y. 153, 160 (1871) (stating that "[a] difference is

recognized between a misnomer of a corporation in judicial proceedings, and in obligations,

grants, etc.; and while in the former it will be fatal, effect may be given to the latter,

notwithstanding the misnomer." (collecting cases)).  This is particularly true when the

misnomer "caused no confusion."  *Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F. Supp.

2d 100, 109 n.6 (E.D.N.Y. 2009) (citations omitted).  "Absent such an allegation [of

misapprehension], the Court will not permit [one party] to capitalize on [a] technical naming error in contravention of the parties' evident intentions." *Spanierman Gallery, PSP*, 320 F. Supp. 2d at 112 (citation omitted).

The 2018 supply agreement, attached to Defendants' memorandum of law in support of its motion to dismiss, identifies the parties as "Prinova Solutions, LLC" and "Hennessey Foods, LLC, a New York corporation." *See* Dkt. No. 10-3, 2018 Supply Agreement, at 2.  Mr. Dygert, as president, signed the agreement on behalf of "Hennessy Foods, LLC." *See id.* at 8.  The 2018 confidentiality agreement identifies the parties as "Prinova US LLC," and "Henessey Foods LLC," and Mr. Dygert signed for Henessey Foods LLC as its "[s]ole [o]wner." *See* Dkt. No. 10-4, Confidentiality Agreement, at 6.  Finally, the 2019 supply agreement is also between "Prinova Solutions, LLC," and "Hennessy Foods LLC, a New York corporation," and Mr. Dygert signed it as president of "Hennessey Foods, LLC." *See* Dkt. No. 10-5, 2019 Supply Agreement, at 2, 8.  Defendants challenge that these parties are not the same as Plaintiff because each of these agreements spell Hen[n]ess[e]y differently, add or omit a comma, and do not include the word "Consulting."

In Mr. Dygert's declaration, he attested that he was the president of Plaintiff Henessey Food Consulting LLC, and was not an officer or an employee of any other company; and, when he entered into contracts with Defendants, it was his understanding and intention that Plaintiff was entering into each of the agreements.  *See* Dkt. No. 13-1, Dygert Decl., at ¶¶ 5-6.  Furthermore, Mr. Dygert contended that, until Defendants filed their motion to dismiss, Defendants never expressed any confusion or any doubt that the agreements into which they entered referred to Plaintiff.  *See id.* at ¶ 7.  Mr. Dygert also attested that, when he formed his company, he intended the name to use the spelling "Hennessy," but the official registration paperwork used

the "Henessey" spelling instead, which he considered to be a mistake. *See id.* at ¶ 9.

Consequently, Mr. Dygert stated, Plaintiff has filed doing-business-as ("DBA") registrations as

"Hennessy Food" and "Hennessy Foods." *See id.* at ¶ 10.  Mr. Dygert asserted that, consistent

with the DBAs, he often referred to Plaintiff by names such as "Hennessy Food" or "Hennessy

Foods," and used those names in its website domain name and company letterhead.  *See id.* at

¶ 13.  Mr. Dygert further stated that he was not aware of any other company in the industry that

goes by the name "Hennessy Foods, LLC," "Hennessey Foods LLC," or "Henessey Foods,

LLC"; and, thus, he believed it was intended to be an obvious reference to Plaintiff.  *See id.* at

¶ 14.  Mr. Dygert also attested that he signed the agreements in his capacity as Plaintiff's

president, and it was his understanding and intention that those names refer to Plaintiff's

company. *See id.* at ¶ 15.

Based on the foregoing, it appears clear that the parties intended that the 2018 and 2019

supply agreements and the confidentiality agreement would be binding between Plaintiff, as Mr.

Dygert's company, and Defendants.  Defendants have not alleged any confusion before filing

their motion to dismiss nor have they alleged that there is even a similarly named

"Hen[n]ess[e]y Foods[,] LLC" in that industry.  Accordingly, the Court finds that it is

"unimportant" that different spellings of Plaintiff's name were used in the contracts and find that

Plaintiff was, in fact, a party to the contracts.  Therefore, the Court denies Defendants' motion to

dismiss on this basis.

### C.  **Whether Plaintiff stated a claim for misappropriation of trade secrets pursuant to both the DTSA and New York law**

"The DTSA provides a private cause of action to the 'owner of a trade secret that is

misappropriated.'" *Charles Ramsey Co. v. Fabtech-NY LLC*, No. 1:18-CV-0546 (LEK/CFH),

2020 U.S. Dist. LEXIS 9348, *32 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (quoting 18 U.S.C.

§ 1836(b)(1)).  "'A plaintiff asserting claims under the DTSA must [therefore] show[:] (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret[;] and (2) misappropriation of that secret, defined as knowing improper acquisition and use or disclosure of the secret.'"  *Id.* (quoting *Danping Li v. Gelormino*, No. 18-CV-442, 2019 U.S. Dist. LEXIS 74188, 2019 WL 1957539, at *8 (D. Conn. May 2, 2019) (citation omitted)).  The DTSA defines the term "trade secret" as follows:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . compilations . . . formulas . . . [or] procedures . . ., whether tangible or intangible, . . . if –
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3)(A)-(B).

The elements under New York law are similar.  "'To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'"  *Citizens Secs., Inc. v. Bender*, No. 1:19-CV-916 (MAD/DJS), 2019 U.S. Dist. LEXIS 128571, *9-*10 (N.D.N.Y. Aug. 1, 2019) (D'Agostino, J.) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999) (citations omitted)).  "In determining whether information constitutes a trade secret, New York courts have considered the following factors:

> '(1) The extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors;

(5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.'"

*Id.* at *10 (quoting [*N. Atl. Instruments, Inc.*, 188 F.3d at 44] (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 604 N.Y.S.2d 912 (1993))).

Notably, "'[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable.'" *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) (quoting *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. [1985]), *cert. denied*, 474 U.S. 844, 88 L. Ed. 2d 108, 106 S. Ct. 131 (1985)) (other citation omitted). "'The question of whether or not a customer list is a trade secret is generally a question of fact.'" *Id.* (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991)) (other citations omitted). Furthermore, customer information that would not independently rise to the level of a trade secret may be justifiably treated as a trade secret if the defendant acquired it wrongfully, such as by stealing or copying. *See Paz Sys. v. Dakota Grp. Corp.*, 514 F. Supp. 2d 402, 408 (E.D.N.Y. 2007); *Ecolab, Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991).

In its complaint, Plaintiff alleges that it developed "proprietary antioxidant solutions" made to prevent produce, including fresh-cut fruit, from browning. *See* Dkt. No. 1 at ¶ 3. That product formula is comprised of specific ingredients to reach chemical, functional, premix blending, manufacturing, shipping, and customer use objectives. *See id.* at ¶ 23. According to Plaintiff, it spent at least $375,000 developing its product formula. *See id.* at ¶ 24. Plaintiff alleges that its product formula is significantly better than competing antioxidant products and its formula thus gives it a significant advantage over its competitors. *See id.* at ¶¶ 30-31.

Plaintiff contends that the formula is key to its success in the market for antioxidant solutions for fresh-cut produce; and, thus, it keeps the formula secret. *See id.* at ¶¶ 32-33. Specifically, Plaintiff alleges that only three of its employees have access to the product formula, and the formulation specification documents are "printed on security (anticopy) paper and stored in a locked desk drawer of [its] President and owner." *See id.* at ¶¶ 33-34. Plaintiff further alleges that it has not disclosed the composition of its product formula to anyone outside of its company without the protection of confidentiality agreements. *See id.* at ¶ 35. Plaintiff therefore contends that the composition of its proprietary antioxidant solutions constitutes a valuable trade secret. *See id.* at ¶ 29.

Plaintiff alleges that, in 2018, it negotiated an agreement with Defendants, in which Defendants would obtain the raw ingredients to mix, blend, package, and deliver Plaintiff's product formula to it, pursuant to Plaintiff's detailed specifications; and Plaintiff would then sell the product to its customers. *See id.* at ¶ 27. As part of the agreement, Plaintiff alleges that the parties signed a confidentiality agreement, which requires that a party receiving confidential information must not disclose that information except to its representatives who need to know it to execute the transaction. *See id.* at ¶¶ 38-39. Plaintiff's complaint sets out various other terms of the confidentiality and supply agreements between the parties and alleges that, on February 14, 2019, Plaintiff shared its product formula trade secret, including the formulation for "HFC-10," with Defendants for the purpose of fulfilling the parties' supply agreement. *See id.* at ¶¶ 52-53. Plaintiff further contends that, as part of its supply agreement, it disclosed confidential business information to Defendants, including information about its "customers, potential customers, customers' requirements, and other information about the market for its products for purposes of fulfilling the parties' agreement[.]" *See id.* at ¶ 54. These customers

included Peterson Farms and Del Monte, and it also disclosed that Crunch Pak was a potential customer. *See id.* at ¶¶ 56, 60, 64.

Plaintiff alleges that, upon information and belief, Defendants did not make or sell antioxidant products for use with fresh-cut produce before they began working with Plaintiff. *See id.* at ¶ 28.  Plaintiff believes that it would require "years of effort and a significant expense for a competitor to develop or duplicate" its product formula. *See id.* at ¶ 36.  Nonetheless, Plaintiff alleges that Defendants represented to food manufacturers, including Peterson Farms, Del Monte, and Crunch Pak, that they could supply the same or substantially similar antioxidant products – instead of Plaintiff's product formula – directly to those food manufacturers. *See id.* at ¶¶ 55-67.  According to Plaintiff, Defendants' representatives admitted in July 2019 that they approached those three manufacturers. *See id.* at ¶ 70.  Plaintiff asserts that, upon information and belief, Defendants secured a six-month supply agreement to provide Crunch Pak with antioxidant products; and, therefore, Crunch Pak did not contract with Plaintiff. *See id.* at ¶ 67. Plaintiff contends that Defendants would not have invested in developing, developed, or sold or attempted to sell the antioxidant products to those manufacturers if they had not used Plaintiff's proprietary and trade secret information, including the composition of its product formula, information about Plaintiff's customers, and information about Plaintiff's sales volumes and the market for its products. *See id.* at ¶¶ 72-75.

With respect to the first element for a misappropriation of trade secrets claim, the Court finds that Plaintiff has alleged that it possessed trade secrets relating to both its product formula and its customer information.  As to the product formula, Plaintiff has sufficiently alleged that the formula is a combination of chemicals used to create an antioxidant mixture that prevents fresh produce from browning, that one of the formulas is referred to in the parties' agreements

as "HFC-10," and that the formula is heavily guarded in that it is only released to third parties with a confidentiality agreement, only three employees know the formula, and the written formulation is kept on special paper and secured.  Plaintiff further alleged that the formula derives independent economic value because it is what keeps the company competitive in the market and the formula itself cost several hundreds of thousands of dollars to develop. Regarding the second element, the Court finds that Plaintiff sufficiently established misappropriation by alleging that it entered into confidentiality and supply agreements with Defendants that precluded them from revealing the formula or using it in any manner other than to create and supply the chemical compositions that Plaintiff would sell to manufacturers. Plaintiff alleged that, despite this agreement, Defendants suddenly began marketing the same or substantially similar product as its own to Plaintiff's customers when Defendants had never produced an antioxidant solution for fresh produce before learning Plaintiff's formula.

Concerning Plaintiff's customer list and sales specifications, the Court finds that Plaintiff satisfied both elements for a misappropriation claim by alleging that such information included "customers, potential customers, customers' requirements, and other information about the market for its products for purposes of fulfilling the parties' agreement[.]"  As discussed above, customer lists and information may constitute trade secrets, particularly if the defendant wrongly obtained or used the information.  *See N. Atl. Instruments, Inc.*, 188 F.3d at 44; *Paz Sys.*, 514 F. Supp. 2d at 408.  As with the product formula, Plaintiff alleged that Defendants signed a confidentiality agreement in addition to the supply agreement indicating that it would not utilize or disclose that customer information; yet, as Plaintiff alleged, Defendants reached out to three of Plaintiff's customers or potential customers – an act that they allegedly admitted doing – in an effort to steal those manufacturers' business from Plaintiff.  The Court further

concludes that such conduct constitutes misappropriation under both the DTSA and New York law.

Thus, based on the above-stated allegations, the Court finds that Plaintiff has adequately stated a claim for misappropriation of trade secrets pursuant to both the DTSA and New York law with respect to both its product formula and its customer information.  As such, the Court denies Defendants' motion to dismiss Plaintiff's first and second causes of action.

### D.  Whether Plaintiff stated a claim for tortious interference with business relations

"Under New York law, a plaintiff claiming tortious interference with prospective business relations must show (1) 'the defendant's interference with business relations existing between the plaintiff and a third party,' (2) '*either* with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper.'"[3] *John Mezzalingua Assocs., LLC v. Braunschweig*, No. 5:19-cv-00368 (BKS/TWD), 2020 U.S. Dist. LEXIS 5801, *11 (N.D.N.Y. Jan. 14, 2020) (Sannes, J.) (quoting *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 69 (2d Cir. 2019) (quotation omitted)).  "To satisfy the first prong, 'the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff.'"  *Id.* (quoting *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (quotation omitted)).  "[W]here 'the

---

[3] Although Plaintiff styled its allegation as one for tortious interference with business relations, based on the allegations in the complaint with respect to Crunch Pak, it appears that Plaintiff's cause of action could more appropriately be described as one for tortious interference with prospective business relations, which is sometimes called tortious interference with prospective economic advantage.  "'[T]ortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action[,]'" *Popat v. Levy*, 328 F. Supp. 3d 106, 131 n.5 (W.D.N.Y. 2018) (quotation and other citation omitted); and "no matter the term used, the elements are the same," *Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017), *reconsideration denied*, No. 16-cv-4389 (ADS) (SIL), 2017 U.S. Dist. LEXIS 153275 (E.D.N.Y. Sept. 20, 2017).

defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.'" *Id.* (quoting [*IQ Dental Supply, Inc.*, 924 F.3d at 69] (quotation omitted)).  To satisfy the "wrongful means" element of the second prong, a plaintiff must show "'as a general rule,' that 'the defendant's conduct . . . amount[ed] to a crime or an independent tort[.]'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359 (2004)).

In its ninth cause of action, Plaintiff alleges that it identified Crunch Pak as a likely customer for its proprietary antioxidant products, approached Crunch Pak about selling its products to the company, and intended Defendants to make the product for Plaintiff.  *See* Dkt. No. 1 at ¶¶ 204-205.  Plaintiff allegedly communicated this intention to Defendants.  *See id.* at ¶ 206.  However, according to Plaintiff, Defendants then used confidential information that Plaintiff had disclosed to it and attempted to sell antioxidant products directly to Crunch Pak in competition with Plaintiff.  *See id.* at ¶¶ 207-208.  Plaintiff further alleged that Defendants' use of Plaintiff's confidential information to sell antioxidant products directly to Crunch Pak in competition with Plaintiff was "dishonest, unfair, and improper."  *See id.* at ¶ 209.

Plaintiff claims that, as a result of Defendants' interference, Crunch Pak did not enter into a supply agreement to purchase antioxidant products from Plaintiff; and, upon information and belief, Plaintiff alleges that Crunch Pak began purchasing antioxidant products from Defendants.  *See id.* at ¶¶ 210-211.  Accordingly, Plaintiff contends that Defendants interfered with Plaintiff's prospective business relationship with Crunch Pak, Plaintiff was harmed by

Defendants' actions, and Defendants' actions constituted tortious interference with business relations. *See id.* at ¶¶ 212-213.[4]

Defendants do not appear to dispute that Plaintiff has established the first element of this cause of action. *See* Dkt. No. 10-1 at 19-21.  Nonetheless, the Court finds that Plaintiff has satisfied this element because it alleged that Defendants convinced Crunch Pak not to enter into a business relationship with Plaintiff and to enter into one with Defendants instead and that they did so fraudulently because they used Plaintiff's product formula and customer information trade secrets to conduct their interference.  With respect to the second element, the Court relies on its above-stated conclusion that Plaintiff has plausibly stated a cause of action for misappropriation of trade secrets pursuant to the DTSA and New York law; and, therefore the Court further finds that such intentional tort constitutes "wrongful means" to satisfy Plaintiff's tortious interference claim.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's ninth cause of action.

### E. Whether Plaintiff's contract claims fail because the 2019 agreement superseded the 2018 agreement

Defendants point to a Second Circuit opinion that holds, "[w]hen the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement." *Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990) (collecting cases). The 2019 supply agreement provides that it constitutes the "entire agreement" and "supersedes any prior or contemporaneous agreements or understandings."  *See* Dkt. No. 10-5 at 6. Although Defendants appear to argue that this language inherently dictates that all earlier claims

---

[4] Plaintiff does not allege that Defendants tortiously interfered with its relationships with Del Monte or Peterson Farms in this cause of action.  *See generally id.* at ¶¶ 203-213.

are released, they do not point to any caselaw to support that position, and the Court has not found any in this Circuit.  Furthermore, it is illogical that a breaching party would be absolved of all liability under a prior contract once a new agreement is signed.  According to *Health-Chem Corp.*, the parties may bring suit for breach pursuant to the new agreement going forward.  However, they are not limited from suing for breaches of the prior agreement when conduct occurred before the subsequent agreement.

In this case, Plaintiff's causes of action generally stem from Defendants' alleged violations of the confidentiality provision in the 2018 supply agreement and the separate 2018 confidentiality agreement.  Notably, the 2018 and 2019 supply agreements contain the exact same language with respect to confidentiality, including language precluding both parties from divulging "to any party or use for its own benefit or the benefit of any third party any trade secrets or other proprietary or confidential information with respect to the business of the other[.]"  *See* Dkt. No. 10-3 at 4; Dkt. No.10-5 at 4.  The 2018 confidentiality agreement contained similar language.  *See generally* Dkt. No. 10-4.  Plaintiff adequately alleges – as discussed above – that Defendants violated those agreements by attempting to sell Plaintiff's product formula to Plaintiff's customers in direct competition with Plaintiff.  Because this conduct allegedly occurred before the 2019 agreement went into effect, the Court finds that it does not matter for purposes of this litigation that the 2019 supply agreement superseded the 2018 supply agreement.  Accordingly, the Court finds that Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims may go forward; and, therefore, the Court denies Defendants' motion to dismiss these claims.

**F.  Whether several of Plaintiff's claims are duplicative**

The Federal Rules of Civil Procedure permit a party to plead in the alternative.  *See* Fed. R.

Civ. P. 8(d)(2).  This rule further provides that, if a plaintiff makes alternative claims, the

complaint is sufficient if any of the claims is sufficient.  *See id.*; *Facci-Brahler v. Montgomery

Cty.*, No. 1:18-CV-0941 (LEK/ATB), 2021 U.S. Dist. LEXIS 61547, *8 n.3 (N.D.N.Y. Mar. 31,

2021) (Kahn, J.).  When plaintiffs seek to plead quasi-contract claims in addition to their breach

of contract claims, "[c]ourts have permitted pleading in the alternative in the face of a written

agreement . . . when there is a dispute as to the agreement's validity or enforceability."  *Air

Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y.

2009) (citations omitted); *accord United States ex rel. Five Star Elec. Corp. v. Liberty Mut. Ins.

Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (summary order).  Therefore, at the motion to dismiss

stage of litigation, courts will permit plaintiffs to plead quasi-contractual claims, such as unjust

enrichment claims, in the alternative to their breach of contract claims, particularly when the

contract's enforceability is in dispute.  *See e.g.*, *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228,

241-42 (N.D.N.Y. 2021) (D'Agostino, J.), *mod. on other grounds*, *Faber v. Cornell Univ.*, No.

3:20-CV-467 (MAD/ML), 2021 U.S. Dist. LEXIS 204816 (N.D.N.Y. Oct. 25, 2021); *Coyne

Int'l Enters. Corp. v. Mylan Pharms., Inc.*, No. 5:13-cv-821 (MAD/TWD), 2014 U.S. Dist.

LEXIS 82576, *9-*10 (N.D.N.Y. June 18, 2014) (D'Agostino, J.).

As Plaintiff argues and as discussed above, Defendants contend that Plaintiff was not a party

to either the confidentiality agreement or the supply agreements.  *See* Dkt. No. 10-1 at 12.

Defendants also argue that one Defendant or the other, but not both, were subject to those

agreements.  *See id.*  Thus, the Court concludes that there is a question as to the applicability

and enforceability of the agreements between the parties.  Furthermore, pursuant to Rule 8 of

the Federal Rules of Civil Procedure, the Court finds that Plaintiff is permitted to plead in the

alternative at this early stage of the litigation.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's second, fourth, fifth, sixth, and eighth causes of action as duplicative.


## III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint, *see* Dkt. No. 10, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court is directed to amend the caption to indicate that there are two Defendants in this case – Prinova Solutions, LLC and Prinova US LLC; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated:  January 18, 2022
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge