UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HENESSEY FOOD CONSULTING LLC,

Plaintiff,

v.                                                          5:20-cv-0806
                                                            (TWD)

PRINOVA SOLUTIONS, LLC,
PRINOVA US, LLC,

Defendants.

_____

APPEARANCES:                                OF COUNSEL:

HARRIS BEACH, PLLC                          JAMES R. MULDOON, ESQ.
333 West Washington Street
Suite 200
Syracuse, NY 13202
          -and-
99 Garnsey Road
Pittsford, NY 14534
Attorneys for Plaintiff

LAW OFFICE OF MARK R. MYERS, LLC            MARK RANDOLPH MYERS, ESQ.
P.O. Box 503
Storrs Mansfield, CT 06268-0503
Attorneys for Plaintiff

MOSES, SINGER LAW FIRM                      DANIEL HOFFMAN, ESQ.
405 Lexington Avenue                        DAVID A. LACKOWITZ, ESQ.
New York, NY 10174                          JOHN BARANELLO, ESQ.
Attorneys for Defendants

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I.      INTRODUCTION

Plaintiff Henessey Food Consulting, LLC ("Henessey" or "Plaintiff") brings this action

against Defendants Prinova Solutions, LLC and Prinova US, LLC (collectively, "Prinova" or

"Defendants").[1,2]  Currently before the Court are twelve motions, consisting of the parties'

cross-motions for summary judgment, Dkt. Nos. 123, 128, three *Daubert* motions, Dkt. Nos.

124, 126, 127, and seven motions to file under seal, Dkt. Nos. 122, 125, 150, 154, 161, 164, 167.

## II.   BACKGROUND

Henessey Food Consulting is a New York limited liability company in the business of

selling solutions to prevent the browning of fresh-cut produce, including apples.  Defendants

Prinova Solutions and Prinova US are Delaware limited liability companies in the business of

distributing functional ingredients and nutrient premixes.  Plaintiff sought a company to blend its

formulations, discovered Prinova, and contacted a Prinova sales representative.

The parties entered into discussions to explore one or more business relationships or

transactions as memorialized in a Mutual Confidentiality Agreement ("mutual confidentiality

agreement") dated January 31, 2018.   On September 6, 2018, the parties executed a Supply

Agreement ("2018 supply agreement").   The Court assumes the parties' familiarity with the

remaining facts, which were hotly disputed throughout their respective papers.

Henessey commenced this action on July 16, 2015.  *See generally*, Dkt. No. 1.  Plaintiff's

complaint contained nine causes of action: (1) misappropriation of trade secrets under the

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.; (2) misappropriation of trade

secrets under New York law; (3) breach of contract with respect to the 2018 supply agreement;

---

[1] The parties consented to the jurisdiction of a Magistrate Judge.  *See* Dkt. No. 28.
[2] This matter was commenced by "Henessey Food Consulting LLC," *see generally*, Dkt. No. 1,
however, as Judge Scullin addressed in the January, 2022, Decision and Order, agreements
between the parties identified Plaintiff as "Hennessey Foods, LLC," "Hennessey Foods LLC," and
"Hennessy Foods LLC," *see* Dkt. No. 21 at 6.  The Court further notes the parties utilized
different spellings of Plaintiff's name in their motion papers.  For purposes of the instant
Memorandum-Decision and Order, the Court will refer to Plaintiff as "Henessey," as it appears
on the docket, and adopts Judge Scullin's finding that the different spellings of Plaintiff's name
are "unimportant."  *See id*. at 7.

(4) breach of the covenant of good faith and fair dealing with respect to the 2018 supply

agreement; (5) unfair competition; (6) unjust enrichment; (7) breach of contract with respect to

the mutual confidentiality agreement; (8) breach of the covenant of good faith and fair dealing

with respect to the mutual confidentiality agreement; and (9) tortious interference with business

relations.  *See id*. at 12-27.  Defendants moved to dismiss the complaint for failure to state a

claim.  *See generally*, Dkt. No. 10.  By Memorandum-Decision and Order dated January 18,

2022, the Hon. Frederick J. Scullin, United States District Judge, denied Defendants' motion to

dismiss.  *See generally*, Dkt. No. 21.

## III.    LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52

(1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine

issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v.*

*Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A fact is "material" if it "might affect the outcome

of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  The movant may meet this

burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial.  *Salahuddin*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'"  *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252).  In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful."  *Id.* (citation and internal quotation marks omitted).  Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  "Where, as here, there are cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'"  *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir.

2001)).  In applying the summary judgment standard, the court should not weigh evidence or assess the credibility of witnesses.  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

### B.  *Daubert*

Under Rule 702 of the Federal Rules of Evidence, the Court is charged with a "gatekeeping" obligation with respect to expert testimony and must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "*Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).

Under *Daubert*, factors relevant to determining reliability include "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific

community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94). The reliability inquiry is "a flexible one," *Daubert*, 509 U.S. at 594, and the factors to be considered "depend[ ] upon the particular circumstances of the particular case at issue." *Kumho Tire Co.*, 526 U.S. at 150. "Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications." *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994), *aff'd*, 101 F.3d 682 (2d Cir. 1996). However, the expert must "stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline." *Id*.

### C.  Filing Under Seal

There is a general presumption in favor of public access to judicial documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit Court of Appeals has described a three-step inquiry to assess whether documents may be withheld from public view. To that end, the Court must first determine whether the document in question is, in fact, a judicial document. *See id*. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119 (quoting *Amodeo*, 44 F.3d at 145).

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id*. at 119.

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article

> III judicial power and the resultant value of such information to
> those monitoring the federal courts.  Generally, the information will
> fall somewhere on a continuum from matters that directly affect an
> adjudication to matters that come within a court's purview solely to
> insure their irrelevance.

*United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).  "Finally, after determining the

weight of the presumption of access, the court must 'balance competing considerations against

it.'"  *Lugosch*, 435 F.3d at 119 (quoting *Amodeo*, 71 F.3d 1044, 1050).

## IV.   ANALYSIS

### A.  Motions for Summary Judgment

For the reasons explained below, Defendants' motion for summary judgment is granted

as to Plaintiff's second, fourth, fifth, sixth, eighth, and ninth causes of action, but denied as to

Plaintiff's first, third, and seventh causes of action, and Plaintiff's motion for partial summary

judgment is denied.

#### 1.  Applicable Law

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a

federal claim must apply the choice of law rules of the forum state."  *Rogers v. Grimaldi*, 875

F.2d 994, 1002 (2d Cir. 1989).  "Generally, [New York] courts will enforce a choice-of-law

clause so long as the chosen law bears a reasonable relationship to the parties or the transaction."

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 641 (2d Cir. 2016)

(quoting *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 825 N.Y.S.2d 692, 859

N.E.2d 498, 500 (2006)) (internal quotations omitted).

Plaintiff's third and fourth causes of action allege a breach of contract and breach of the

covenants of good faith and fair dealing with respect to the 2018 supply agreement.  *See*

*generally*, Dkt. No. 1 at 19-22.  As relevant here, the 2018 supply agreement provides "[t]he

formation, legality, validity, enforcement, interpretation and performance of this Agreement shall be governed and construed according to the laws of the State of Delaware, without giving effect to the principles of conflict of laws."  Baranello Declaration, Exhibit 15, p. 5.  Plaintiff's seventh and eighth causes of action allege a breach of contract and breach of the covenants of good faith and fair dealing with respect to the mutual confidentiality agreement.  *See generally*, Dkt. No. 1 at 24-26.  The mutual confidentiality agreement provides "[t]he laws of the State of Illinois, without giving effect to principles of conflict of laws, govern all matters arising under this agreement, including all tort claims."  Baranello Declaration, Exhibit 13, p. 4.

Accordingly, Delaware law governs Plaintiff's third and fourth causes of action, related to the 2018 supply agreement, and Illinois law governs Plaintiff's seventh and eighth causes of action, related to the mutual confidentiality agreement.

Plaintiff's first cause of action alleges misappropriation of trade secrets under the DTSA, a federal statute.  *See generally*, Dkt. No. 1 at 12-15.  Therefore, no choice of law analysis is required as to this claim.

However, the parties dispute the law applicable to Plaintiff's non-contract claims. Plaintiff's second, fifth, sixth, and ninth causes of action allege misappropriation of trade secrets, unfair competition, unjust enrichment, and tortious interference with business relations, respectively.  *See generally*, *id*. at 15-19, 22-23, 26-27.  Defendants assert Illinois law governs Plaintiff's non-contract claims, *see* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 7-9, while Plaintiff contends New York law governs, *see* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 16-19.

"The first step in any case presenting a potential choice-of-law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Fireman's Fund Ins. Co.*, 822 F.3d at 641 (internal quotation and citation omitted).  If such a conflict exists, "New York courts apply an 'interest analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 254 (S.D.N.Y. 2013) (citing *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)), *aff'd*, 572 F. App'x 19 (2d Cir. 2014).

The Illinois Trade Secrets Act ("ITSA"), "based on the Uniform Trade Secrets Act of 1985," governs the misappropriation of trade secrets under Illinois law.  *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005).  Section 8(a) of the ITSA "says that 'this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.'"  *Id*. (quoiting 765 ILCS 1065/8(a)).  In other words, Illinois law preempts non-contract claims based on the alleged misuse of trade secrets or confidential information.  By contrast, New York has not adopted a version of the Uniform Trade Secrets Act, and New York law does not provide for statutory preemption of non-contract claims.  *See*, *e.g.*, *Sarkissian Mason, Inc.*, 955 F. Supp. 2d at 254 (New York law does not preempt non-contract based remedies for misappropriation of trade secrets) (citing *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 401, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993)).  Therefore, Illinois and New York law differ as to Plaintiff's state law misappropriation claim and common law tort claims for unfair competition, unjust enrichment, and tortious interference with business relations, and the Court must determine which

jurisdiction has the greatest interest in the litigation.  *See Sarkissian Mason, Inc.*, 955 F. Supp. 2d at 254.

"In trade secret cases the Second Circuit and its district courts have often used the locus of the misappropriation to determine the locus of the tort and the state with the greatest interest." *Id*. (citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997); *Fedders Corp. v. Haier Am. Trading, LLC*, No. 1:00-CV-5583, 2002 WL 519733 (S.D.N.Y. Apr. 4, 2002); *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002)). The State of Illinois has the greatest interest in this case.  First, Prinova's principal place of business is in the State of Illinois.  Henessey submitted orders to Prinova in Illinois, where Prinova then manufactured, packaged, and shipped the product.  As Prinova points out, Illinois is the state where the alleged misuse of confidential information occurred.  *See Softel, Inc.*, 118 F.3d at 968 (applying New York law where "(1) the defendant maintains offices in New York; (2) the plaintiff apparently maintains an apartment and de facto office in New York; and (3) the misappropriation, if any, apparently took place in New York, at [the defendant]'s offices."); *Fedders Corp.*, 2002 WL 519733, at *4 (Illinois had the greatest interest in the litigation where, *inter alia*, "the actual misappropriation, if any, took place in Illinois . . . .") (citation omitted). Additionally, the choice of Illinois law in the parties' mutual confidentiality agreement indicates the parties reasonably expected the law of the State of Illinois to govern the question of confidentiality between them.  *See Sarkissian Mason, Inc.*, 955 F. Supp. 2d at 254 ("the Missouri choice of law clause in the NDA, while not applicable to non-contractual claims, indicates that the parties reasonably expected Missouri law to govern the question of confidentiality between them.") (citing *Fedders Corp.*, 2002 WL 519733 at *3-4) (additional citation omitted).

Moreover, while Plaintiff has emphasized its connection to New York as: (1) the domicile of its president, the location where he gained knowledge and experience, formulated/developed the trade secrets at issue, contacted the Defendants, and executed the 2019 supply agreement;[3] (2) the state to which its purchase from Defendants would be received, tested, and shipped to customers; and (3) the state where the Defendants learned trade secret information, where Plaintiff's president learned of Defendants' alleged misuse of said information, and held meetings at the time the dispute arose, *see* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 18-19, these contacts are immaterial to where Prinova allegedly misappropriated the information at issue.  Therefore, Illinois law governs Plaintiff's state law non-contract claims.

### 2.  Defendants' Motion for Summary Judgment

### i.  Misappropriation of Trade Secrets (Claims 1 & 2)

Defendants first argue Plaintiff's misappropriation claims fail as a matter of law.  *See generally*, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 10-21.  More specifically, Defendants aver Henessey failed to identify its trade secrets with sufficient particularity, and the alleged trade secrets are not trade secrets, because Henessey did not take reasonable measures to protect them, and they are known in the industry and readily ascertainable.  *See id*.  Plaintiff contends it sufficiently identified its trade secrets, and that it took reasonable measures to protect those trade secrets, which were neither known in the industry nor readily ascertainable.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 19-24.

---

[3] The parties executed a subsequent supply agreement, the "2019 supply agreement," on May 29, 2019.  The 2019 supply agreement is not the subject of any of the causes of action currently before this Court.

Plaintiff's first claim alleges misappropriation of trade secrets under the DTSA, Dkt. No. 1 at 12-15, and Plaintiff's second claim alleges misappropriation of trade secrets under New York law, Dkt. No. 1 at 15-19.  As explained above, New York law does not govern Plaintiff's non-contract claims, therefore, dismissal of Plaintiff's second cause of action is required.  *See*, *e.g.*, *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 261-62 (S.D.N.Y. 2020) ("Georgia, not Connecticut, governs tort claims in this case because Georgia clearly has the greatest interest in this litigation.  Accordingly, th[e] cause of action [for misappropriation of trade secrets under Connecticut law] should be dismissed because it is alleged under the wrong state's trade secrets statute.") (citation omitted).

To prevail on a misappropriation of trade secrets claim, a plaintiff must prove "(1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019) (internal quotations and citation omitted).  Under the DTSA,

> the term "trade secret" is defined as: all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  The question of whether information rises to the level of a trade secret is generally a question of fact.  *See*, *e.g.*, *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991) ("The question of whether or not a customer list is a trade secret is generally a question of

fact."); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y.) ("The existence of a trade secret is generally a question of fact . . . ."), *aff'd*, 838 F. App'x 582 (2d Cir. 2020).

As a threshold matter, a plaintiff must describe its trade secrets with sufficient particularity. *See*, *e.g.*, *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014) ("a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial."), *aff'd*, 610 F. App'x 69 (2d Cir. 2015). "Put differently, to survive summary judgment, a plaintiff's trade secret must be described specifically enough for a jury to apply the relevant legal tests -- whether a trade secret existed and whether the defendant misappropriated it." *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 1:17-CV-0589, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021) ("When the plaintiff's description of its trade secret, based on cit[ations] to particular parts of materials in the record . . . allows a reasonable juror to determine whether the defendant protected a valuable secret, and could allow her to determine whether the defendant misappropriated that secret, summary judgment is improper.") (internal quotations and citations omitted).

In response to Defendants' argument that Henessey failed to identify its trade secrets with sufficient particularity, Plaintiff avers it identified the following pieces of information which, individually and in combination, constitute trade secrets: (1) "Hennessy's product formulations;" (2) "[t]he price charged to Hennessy for its anti-browning solutions by Prinova under contract to Hennessy . . .;" (3) "Hennessy's pricing strategy to radically depart from the industry-standard pricing . . . . ;" (4) "Hennessy's identification of Crunch Pak and Peterson Farms as potential customers and sales forecasts;" (5) "[t]he levels and balance of [ingredients] in Hennessy's formulations;" (6) "[m]argins on product made according to Hennessy's formulations;" and (7)

"[i]ngredient changes to address solubility problems[.]"  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 21 (internal quotations and citations omitted).  In reply, Defendants argue "Henessey has constantly shifted its theory as it described its trade secrets differently [throughout] the litigation."  Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, p. 3 (internal quotations and citations omitted).

As an initial matter, the Court agrees that Plaintiff's lengthy interrogatory responses and its president's overinclusive deposition testimony muddied the waters as to the purported trade secrets at issue.  However, at this juncture, Plaintiff has sufficiently described the following pieces of information specifically enough for a jury to assess whether such information was valuable to it and whether it took reasonable measures to keep such information secret: (1) The "product formulae" (formulas) for "HFC-10," "HFC-14," "HFC-14O," "HFC-16," "HFC-16OG," "HFC-20," and "HFC-35," "by ingredient and composition," Muldoon Declaration, Exhibit 2, p. 14-15; (2) "the prices charged to Hennessy Food for the various anti-browning solutions manufactured by Prinova under contract to Hennessy Food," *id*. at 18, (3) "Hennessy Food's target customers and the potential volume of product to be sold to such customers," including "Hennessy Food's pricing strategy" and target customers "Peterson Farms and Crunch Pak," *id*. at 20-21, and (4) "information of the effect of different suppliers' materials," more specifically, the effect of different suppliers' materials on solubility, "gain[ed] through manufacturing and experience with Hennessy Food's formulation," *id*. at 24.

Defendants assert a variety of arguments as to why the aforementioned pieces of information do not constitute trade secrets under the DTSA.  *See generally*, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 13-21.

Defendants point to evidence suggesting Henessey did not take reasonable measures to keep its trade secrets secret, including disclosures of information to its contractors, customers, and the president's father, without confidentiality restrictions in place.  Prinova also argues Henessey's alleged trade secrets include information that is known in the industry and/or readily ascertainable.

In response, Henessey has pointed to evidence that it took steps to protect its secrets which a jury could find to amount to reasonable measures to keep such information secret.  *See*, *e.g.*, *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 385 (S.D.N.Y. 2023) (explaining, "the 'reasonableness' of any protective measure is a case-specific inquiry and a question of fact.  And so, to defeat a motion for summary judgment, a plaintiff need only point to evidence of protective measures, and then it becomes the jury's task to evaluate whether they were reasonable.").  Plaintiff also emphasizes while its product formulas, prices, solutions to solubility problems, and specific plans to approach target customers may contain information which is known or ascertainable, the aforementioned alleged trade secrets are compilations of facts which a jury could find amounted to a trade secret here.  *See*, *e.g.*, *Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, No. 1:17-CV-5826, 2023 WL 5334638, at *18 (N.D. Ill. Aug. 18, 2023) (explaining, "[t]he value of a compilation lies in its aggregation of information, regardless of whether some of that information is publicly available.  '[E]ven if [the materials at issue] are just compilations of otherwise readily known facts, the compilations themselves are not available to competitors and presumably have some value by gathering the materials into one place.'") (quoting *SKF USA Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 714 (N.D. Ill. 2009)) (additional citations omitted).

Therefore, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, a reasonable jury could conclude Henessey possessed information (or compilations thereof) which was neither generally known, nor ascertainable, which it took reasonable measures to protect, and that Prinova misappropriated said information.[4]  Accordingly, summary judgment is denied as to Plaintiff's first cause of action for misappropriation of trade secrets under the DTSA.  *See*, *e.g.*, *Medidata Sol., Inc.*, 2021 WL 467110, at *10 ("Disputes of material fact exist as to whether the remaining Trade Secrets are valuable and protected.  Therefore, all of them survive summary judgment at this stage.").

### ii.    Breach of Contract (Claims 3 & 7)

Defendants next argue Plaintiff's breach of contract claims fail.  *See generally*, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 21-23.  Plaintiff's seventh cause of action alleges breach of contract with respect to the mutual confidentiality agreement, Dkt. No. 1 at 24-25, and Plaintiff's third cause of action alleges a breach of the 2018 supply agreement, Dkt. No. 1 at 19-20.

The mutual confidentiality agreement acknowledges "[t]he parties have entered into or may enter into discussions to explore one or more business relationships or transactions between them" and, "[i]n the course of discussions regarding such Transaction, it may be necessary for one party (a 'Disclosing Party') to disclose to the other party (a 'Receiving Party') certain proprietary and confidential information that the Disclosing Party wants to remain confidential." Baranello Declaration, Exhibit 13, p. 1.  The agreement defined "Confidential Information" to

---

[4] With respect to the alleged misappropriation, Defendants merely summarily assert "the record demonstrates that Prinova did not use or misappropriate any alleged trade secrets."  Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 21.  Without more, Prinova has failed to demonstrate the absence of disputed material facts as to whether it misappropriated the alleged trade secrets under the DTSA.

include "all written, electronic, oral or other information concerning the Disclosing Party, its business or any of its affiliates, whether prepared by the Disclosing Party or its advisors, that is provided by the Disclosing Party to the Receiving Party" including, but not limited to:

> (i) Data or other information relating to products, inventions, plans, methods, processes, raw materials, ingredients, formulae, compositions, compounds, know-how, developmental or experimental work, including property licenses, products and proposed products, computer programs, databases, systems, software (including object code and source code), concepts, performance features, schedules, original works of authorship, customer lists (including the names, buying habits or practices of any customers), the names of vendors or suppliers, marketing and business methods and the like, reports, analyses, business plans, financial information, statistical information, apparatus, manufacturing technology, contracts, clinical and pre-clinical data and dossiers, business relationships, structures, models, techniques, samples, and any other data, materials, subject matter and the like pertaining to the business of the Disclosing Party that is disclosed to the Receiving Party, including any third-party confidential information that may be properly disclosed by the Disclosing Party to the Receiving Party; and including any other information that may be considered to be proprietary to or a trade secret of the Disclosing Party, whether or not such information is considered a trade secret within the meaning of applicable law.
>
> (ii) Any such data or other information that is learned by the Receiving Party from the Disclosing Party or through the inspection or evaluation of the Disclosing Party's technical or business Information; all data and information obtained by the Receiving Party upon visiting the Disclosing Party's facilities, whether or not such information is owned by the Disclosing Party; notes, analyses, studies or other documents prepared by the Receiving Party that contain or are based on such information or materials relating to the information disclosed by the Disclosing Party.

*Id*. However, the agreement further states "Confidential Information" does not include:

> (i) Information that is already in or enters into the public domain other than as a consequence of the breach of the terms of this Agreement.
>
> (ii) Information that is already properly and lawfully in the possession of the Receiving Party prior to its being fully furnished by the Disclosing Party . . . .

> (iii) Information that becomes available to the Receiving Party on a non-confidential basis from a third party other than the Disclosing Party . . . . [and]
> (iv) Information that the Receiving Party developed independently without reference to or use of any Confidential Information made available to the Receiving Party by the Disclosing Party.

*Id*. at 2.  Finally, the mutual confidential agreement requires "[t]he receiving Party and each of its [Representatives]" to "hold and maintain in confidence all Confidential Information" and "not use any Confidential Information for any purpose other than to evaluate or consummate the Transaction."  *Id*.[5]

The subsequently executed 2018 supply agreement contains the following confidentiality provision:

> The Parties acknowledge that in performing this Agreement they will be provided with and have access to information and materials concerning the other's business, plans and products, including, without limitation, Products, packaging and design specifications, if any, which information and materials are confidential and of substantial value to the other party and which value would be impaired if such information was improperly used or disclosed to third parties. Accordingly, neither party shall, without the prior written consent of the other, either during or after termination of this Agreement, divulge to any party or use for its own benefit or the benefit of any third party any trade secrets or other proprietary or confidential information with respect to the business of the other, unless such disclosure is required by law.  Each party shall take

---

[5] The Court notes a subsequent provision of the mutual confidentiality agreement states:

> The parties agree that except for injunctive relief that a party may seek in any court of competent jurisdiction, the sole venue for all disputes concerning this Agreement shall lay within the exclusive jurisdiction of courts situated in the County of Cook in the State of Illinois and the parties hereby consent to and agree that such courts shall have personal jurisdiction of each party hereto.  THE PARTIES EACH VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY.

Baranello Declaration, Exhibit 13, p. 4.  The parties do not address the impact of this clause on their disputes.  The Court will address the potential effect of this requirement at the next conference which will be scheduled by separate text order.

> every reasonable precaution to protect the confidentiality of the other's confidential information and materials consistent with the efforts exercised by it with respect to its own confidential information and materials. At any time upon written request, each Party shall promptly return or deliver to the other all proprietary or confidential information, documents or material delivered to, acquired by or developed by it during the term of this Agreement and relating to the other's (or the other's affiliates') business.

Baranello Declaration, Exhibit 15, p. 3.  Concerning integration, the 2018 supply agreement states "[t]his Agreement constitutes the entire agreement between Seller and Customer *with respect to the subject matter of this Agreement* and supersedes any prior or contemporaneous agreements or understandings."  *Id*. at 5 (emphasis added).

Defendants aver the mutual confidentiality agreement cannot form the basis of a contract claim because it was superseded by the 2018 supply agreement.  *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 22-23.  Under Delaware law, which governs the 2018 supply agreement, "a binding and completely integrated agreement 'discharges prior agreements to the extent that they are within its scope.'"  *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 822 (Del. Ch. 2020) (quoting Restatement (Second) of Contracts § 213 (1981)).  "When a 'subsequent agreement' contains a valid integration clause, it 'supersedes the terms' of any prior agreement covering the same subject matter."  *Id*. at 823 (citation omitted).  However, "a court will not adopt the interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions."  *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) (citing Restatement (Second) of Contracts § 203 (1981)) (additional citations omitted).  Plaintiff argues the mutual confidentiality agreement was not superseded by the 2018 supply agreement because the agreements do not cover the same subject matter.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 27-28.  The Court agrees.

The confidentiality provision of the 2018 supply agreement utilized prospective language, acknowledging the parties "*will be* provided with and have access to information and materials . . . ."  Baranello Declaration, Exhibit 15, p. 3 (emphasis added).  This prospective language indicates the provision sought to govern the *future* sharing of information.  In other words, the sharing of information after the contract was signed on September 6, 2018.  It necessarily follows that the parties' sharing of information prior to that date, including the sharing of information *after the execution of the mutual confidentiality agreement* on January 31, 2018, but *prior to* September 6, 2018, was not the subject matter of the September 6, 2018, supply agreement.  As Plaintiff points out, "any interpretation of the Supply Agreement that would nullify the Mutual Confidentiality Agreement without providing similar protection for already-disclosed information would be unreasonable."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 28.  Therefore, Defendants' argument that the 2018 supply agreement superseded the mutual confidentiality agreement is unpersuasive.

Defendants also contend Plaintiff's breach of contract claims fail because the information identified as "confidential" by Plaintiff "includes the identity of customers obtained from non-confidential sources, pricing information that originated from Prinova, and general information available via the internet" which "does not constitute 'confidential information' under the contract."  Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 21-22.  Further, Defendants argue Henessey "cannot establish that Defendants used or disclosed any such information, and therefore, there has been no breach."  *Id*. at 22.

Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, Henessey shared information including "formulations, the identity of customers, and business

plans including pricing strategy and sales forecasts," Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 26, which was to be protected by the mutual confidentiality agreement and 2018 supply agreement.  Moreover, as with Plaintiff's claim for misappropriation of trade secrets, issues of fact remain concerning whether Defendants used or disclosed confidential information.  These issues of fact preclude summary judgment, therefore, Defendants' motion is denied as to Plaintiff's breach of contract claims.

### iii.    Breach of Implied Covenant (Claims 4 & 8)

Defendants next contend Plaintiff's breach of implied covenant claims fail, as neither the mutual confidentiality agreement nor the 2018 supply agreement contain non-competition or non-solicitation restrictions, and both Illinois and Delaware law disfavor reading such restrictions into bargained for agreements.  *See generally*, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 23-26.  Plaintiff's fourth cause of action alleges a breach of the covenant of good faith and fair dealing with respect to the 2018 supply agreement, Dkt. No. 1 at 20-22, which is governed by Delaware law.  Plaintiff's eighth cause of action alleges a breach of the covenant of good faith and fair dealing concerning the mutual confidentiality agreement, Dkt. No. 1 at 25-26, which is governed by Illinois law.  Plaintiff avers application of the implied covenants is warranted under the circumstances of this case.  *See generally*, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 28-30.

"The covenant of good faith and fair dealing, implied in every Delaware contract, arises from fundamental notions of fairness.  It is a judicial convention designed to protect the spirit of an agreement when, *without violating an express term of the agreement*, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *Superior Vision*

*Servs., Inc. v. ReliaStar Life Ins. Co.*, 2006 WL 2521426, at *6 (Del. Ch. Aug. 25, 2006) (emphasis in original).  As Delaware's Supreme Court has explained, "[t]he implied covenant of good faith and fair dealing cannot be employed to impose new contract terms that could have been bargained for but were not."  *Blaustein v. Lord Baltimore Cap. Corp.*, 84 A.3d 954, 959 (Del. 2014) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (explaining, courts must "not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.  Parties have a right to enter into good and bad contracts, the law enforces both.")).  "Rather, the implied covenant is used in limited circumstances to include what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting."  *Id*. (internal quotations and citation omitted).

"Under Illinois law, 'every contract contains an implied promise of good faith and fair dealing between the contracting parties,' absent express disavowal."  *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 822-23 (N.D. Ill. 2010) (quoting *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003)) (additional citation omitted).  "However, under Illinois law the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract . . . . Instead, the covenant merely 'guides the construction of the explicit terms in the agreement.'"  *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992)).  Therefore, "[t]he court can only declare implied covenants when there is a reasonable basis to imply certain duties of the parties."  *Snyder v. Howard Johnson's Motor Lodges, Inc.*, 412 F. Supp. 724, 727 (S.D. Ill. 1976) (citing *Adkins v. Adams*, 152 F.2d 489, 492 (7th Cir. 1945) ("Before a covenant will be implied in the express terms of a contract, it must appear therefrom that it was so clearly in the contemplation of the

parties as that they deemed it unnecessary to express it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole.")).

Here, in support of its implied covenant claims, Plaintiff argues: (1) "Prinova had access to Hennessy's formulations, sales forecasts, and pricing" while "Hennessy . . . did not have the same access to Prinova's information," an "asymmetry [which] would automatically and unfairly tilt the playing field in Prinova's favor[;]" (2) "the Supply Agreement committed Hennessy to minimum purchase quantities" and "Prinova's competition undermined Hennessy's ability to meet its minimums[;]" (3) "industry custom and practice prohibited a custom blender from entering into competition with a customer[;]" and (4) "Prinova was not a competitor" in selling blended products to the fresh-cut fruit industry, and "Mr. Dygert specifically selected Prinova for that very reason . . . ."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 29-30.  Yet Plaintiff has failed to identify evidence suggesting the parties' intent to include a restriction on competition in either the mutual confidentiality agreement or 2018 supply agreement.  *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 876-77 (D. Del. 1987) (granting motion for summary judgment "on the contract counterclaim regarding a covenant not to compete" where "[t]here [wa]s no evidence on the record that either [party] . . . had any intention of arranging a covenant not to compete."); *see also Snyder*, 412 F. Supp. at 727 ("While fair dealing is implied in any contract, the court is unable to extend this principle to imply a covenant against competition.").  On the contrary, Henessey's president testified he did not attempt to negotiate a non-competition provision into the contract.  *See* Baranello Declaration, Exhibit 4, p. 157.   Moreover, Plaintiff has not identified support for its theory

"industry custom" prohibits custom blenders from entering into competition with a customer, much less authority requiring application of an implied covenant on that basis.

In sum, the fact that one party would have acquiesced to or benefitted from a contractual restriction on competition is insufficient for this Court to imply duties on the parties beyond those contained in the express terms of a contract negotiated at arms-length.  Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's implied covenant causes of action.

### iv.   Common Law Torts (Claims 5, 6, & 9)

Defendants aver Plaintiff's common law causes of action for unfair competition, unjust enrichment, and tortious interference with business relations are preempted under Illinois law.  *See generally*, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 26-28.  Plaintiff contends, even if Illinois law governs, "Hennessy's unfair competition, tortious interference, and unjust enrichment claims survive because those claims go beyond Prinova's misappropriation of Hennessy's information and encompass Prinova's pattern of dishonest conduct . . . ."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 30.

"Under ITSA, common law 'claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets.'"  *Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 190 F. Supp. 3d 812, 822 (N.D. Ill. 2016) (quoting *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005)).  "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation," *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014), including claims for unfair competition, unjust enrichment, and tortious interference with business relations.  *See*, *e.g.*,

*Health All. Network, Inc. v. Cont'l Cas. Co.*, 354 F. Supp. 2d 411, 423 (S.D.N.Y. 2005) (explaining plaintiffs' cause of action "for unfair competition . . . . must be dismissed" because the ITSA "explicitly states that it 'is intended to displace conflicting tort, restitutionary, *unfair competition*, and other laws of this state providing remedies for misappropriation of a trade secret.'") (quoting 765 ILCS 1065/8(a) and citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992)) (emphasis in original); *Am. Ctr. for Excellence in Surgical Assisting Inc.*, 190 F. Supp. 3d at 824 (concluding the "ITSA preempts the [plaintiff's] unjust enrichment claim."); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 974 (N.D. Ill. 2000) (claims alleging "defendants tortiously interfered with [plaintiff]'s business relations with its customers . . . . are preempted by Section 8 of the ITSA.") (citing *Composite Marine Propellers, Inc.*, 962 F.2d at 1269; *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, 1999 WL 529572, at *3 (N.D. Ill. July 20, 1999)).  "[T]he pertinent question is whether the claim is based solely on the misappropriation of a trade secret or whether the claim seeks recovery for wrongs beyond the misappropriation."  *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 716 (N.D. Ill. 2017) (citing *Am. Ctr. for Excellence in Surgical Assisting Inc.*, 190 F. Supp. 3d at 823) (additional citations omitted); *see also Learning Curve Toys, L.P.*, 1999 WL 529572, at *3 ("In other words, if the operative facts are arguably cognizable under the ITSA, any common law claim that might have been available on those facts in the past now no longer exists in Illinois.").

Here, Plaintiff's causes of action for unfair competition, unjust enrichment, and tortious interference are based on Defendants' alleged misuse of information which Plaintiff contends constitute Henessey's trade secrets.  Plaintiff's unfair competition claim alleges "Prinova used Henessey Food's confidential information and trade secrets to compete with Henessey Food,"

and that "[b]y using Henessey's Food's Product Formula Trade Secret information" and "confidential information about customers, potential customers, and product needs to compete with Henessey Food, Prinova misappropriated the fruit of Henessey Food's labor, skills, and expenditures" and did so "with knowledge it was misappropriating Henessey Food's trade secrets," and "in violation of its obligations to refrain from any unauthorized disclosure or use of Henessey Food's confidential information."  Dkt. No. 1 at 22-23.  Plaintiff's unjust enrichment claim similarly asserts "Prinova has been enriched resulting from its use of Henessey Food's confidential information, including though profits on sales of antioxidant products to Crunch Pak[;]" "Prinova's enrichment resulting from its use of Henessey Food's confidential information . . . came at the expense of Henessey Food[;]" "[i]t would be inequitable for Prinova to retain the profits from sales it achieved by use of Henessey Food's confidential information," and "Henessey Food is entitled to damages for unjust enrichment in the amount of Prinova's profits on sales of antioxidant products that Prinova made as a result of its use of Henessey Food's confidential information . . . ."  *Id*. at 23.  Finally, Plaintiff's cause of action for tortious interference with business relations avers "Henessey Food informed Prinova of its intentions and efforts to sell proprietary antioxidant products to Crunch Pak[,]" "Prinova used confidential information that Henessey Food had disclosed to Prinova when, without Henessey Food's knowledge or consent, Prinova attempted to sell antioxidant products directly to Crunch Pak in competition with Henessey Food[,]" and "Prinova's use of Henessey Food's confidential information to sell antioxidant products directly to Crunch Pak in competition with Henessey Food was dishonest, unfair, and improper."  *Id*. at 27.  Therefore, Plaintiff's fifth, sixth, and ninth causes of action each rest on Prinova's alleged misuse of Henessey's product formulas, pricing

information, and/or plans to approach Crunch Pak, information which Henessey contends constitute trade secrets.

"Because Plaintiffs are clearly seeking remedies for the misappropriation of a trade secret," these causes of actions "must be dismissed."  *Health All. Network, Inc.*, 354 F. Supp. 2d at 423; *cf. SKF USA, Inc.*, 636 F. Supp. 2d at 718-19 (unfair competition claim was not preempted under Illinois law where "the Amended Complaint . . . does not claim that all of the transferred data constitutes trade secrets—indeed, . . . the unfair competition" claim did not "even contain the phrase 'trade secret'—and is thus reasonably read to claim that Defendants received an unfair competitive advantage in its use of non-trade secret information."), *Nat'l Auto Parts, Inc. v. Automart Nationwide, Inc.*, 2015 WL 5693594, at *7 (N.D. Ill. Sept. 24, 2015) (plaintiff's "tortious interference claim" was not preempted by the ITSA because the claim sought "recovery for the alleged damage Defendants caused by defaming [plaintiff] to its customers, thereby interfering with [plaintiff]'s prospective business opportunities.  As such, this claim would remain even if it is determined that [plaintiff]'s customer information is not confidential.").  Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's causes of action for unfair competition, unjust enrichment, and tortious interference with business relations.

#### v.    Additional Issues

Defendants also seek to limit Henessey's recovery of "damages relating to Prinova's valuation and the ultimate purchase price paid by the Nagase Group when it acquired Prinova in 2018."  Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, p. 35 (internal quotations omitted).  Defendants contend "Henessey has produced no evidence establishing any causal link between the alleged conduct at issue in the

case, and the decision by Nagase Group, Co. . . . to acquire Prinova." *Id*; *see also* 18 U.S.C. § 1836(b)(3)(B)(i) (Under the DTSA, damages are available "for actual loss caused by the misappropriation of the trade secret; and . . . for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss . . . ." ).  Plaintiff contends "[w]ithout use of Hennessy's trade secrets, Prinova would not have had an anti-browning product on which to base anticipated revenues at the time of the [sic] [Prinova] sale."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 35.  In other words, Prinova's (alleged) misappropriation of Henessey's trade secrets caused Nagase to pay a greater amount to purchase Prinova than Nagase would have paid but-for Prinova's misappropriation of Henessey's trade secrets, therefore, Prinova was unjustly enriched by the amount Nagase paid to purchase it, less the amount Nagase would have paid for said purchase if Prinova had not misappropriated Henessey's trade secrets.  The Court agrees with Plaintiff that there is an issue of fact as to whether Prinova was unjustly enriched through its use of Henessey's trade secrets.  Accordingly, and because the Court will not reach Defendants' challenge as to the reliability of Dr. Strickland's damages at this stage, summary judgment on this basis is not warranted.

Next, in Plaintiff's response to Defendants' motion for summary judgment, Henessey also argues "Prinova's motion is based on evidence that is inadmissible."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 12.  Plaintiff argues Jason Sikkenga, who submitted a declaration in support of Defendants' motion, "was never identified as a witness that Prinova might use to support its defenses [therefore,] . . . Mr. Sikkenga was never deposed during discovery."  *Id*.  Accordingly, Plaintiff avers Sikkenga's declaration should not be considered, citing the Second Circuit's decision in *Xiao Hong Zheng v.*

*Perfect Team Corp.*, for the proposition that, "[u]nder Rule 37(c)(1), when a party does not provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  739 F. App'x 658, 662 (2d Cir. 2018).

Defendants respond this "informal request should be denied as Henessey failed to file a proper motion."  Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, p. 19.  The Court agrees.  "Imposition of sanctions under Rule 37 is a drastic remedy," *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (citations omitted), which the Court will not provide in the absence of a properly filed motion.

Finally, Plaintiff contends Mr. Chaudhari and Mr. Petrushka provided deposition testimony and declarations which conflicted with each other's statements and Prinova's interrogatory answers.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 12.  "It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."  *Cruz v. Church*, No. 905-CV-1067 (GTS/DEP), 2008 WL 4891165, at *4 (N.D.N.Y. Nov. 10, 2008) (citing *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 174 (2d Cir. 2006)) (additional citations omitted).  Moreover, for the reasons explained above and below, issues of fact remain with respect to Prinova's development of an anti-browning/antioxidant product.  Accordingly, insofar as Plaintiff's memorandum seeks relief from this Court, such request is denied.

### 3.   Plaintiff's Motion for Partial Summary Judgment

In its motion for partial summary judgment, Plaintiff requests the Court dismiss Defendants' reverse engineering defense.  *See generally*, Plaintiff's Memorandum of Law in

Support of Its Motion for Partial Summary Judgment.  Defendants respond Plaintiff

"fundamentally mischaracterizes the defense as one based on 'reversed engineering,' when in

reality, the defense asserted is that Prinova independently developed its formulas without using

or referring to Henessey information" and record evidence, at least, creates a genuine issue of

material fact as to its defense.  *See generally*, Defendants' Memorandum of Law in Opposition to

Plaintiff's Motion for Partial Summary Judgment.

The DTSA, which serves as the basis for Plaintiff's first cause of action, requires a

plaintiff to show both the existence of a trade secret, as previously discussed, and that the

defendant actually misappropriated that trade secret.  *See*, *e.g.*, *Democratic Nat'l Comm.*, 392 F.

Supp. 3d at 447.  To establish actual misappropriation, plaintiff must show either "that the trade

secret was acquired by improper means" or "derived from or through a person who had used

improper means to acquire the trade secret."  18 U.S.C. § 1839(5).  The statute expressly states

"the term 'improper means' . . . does not include reverse engineering, independent derivation, or

any other lawful means of acquisition[.]"  *Id*. § 1839(6); *see also Kewanee Oil Co. v. Bicron

Corp.*, 416 U.S. 470, 476 (1974) (explaining, "trade secret law . . . does not offer protection

against discovery by fair and honest means, such as by independent invention, accidental

disclosure, or by so-called reverse engineering . . . .").

Here, in its amended answer, Prinova asserted Plaintiff's misappropriation claims fail, in

part, because "Defendants' anti-browning products were developed based on publicly available

solutions and formulas" and  "Defendant did not use any of Hennessey's proprietary or

confidential information in developing Defendants' own anti-browning formula.  Defendants'

anti-browning formulas were developed and derived from the publicly available NatureSeal

solution."  Dkt. No. 49 at 15.  Plaintiff asked Defendants to "[d]escribe Prinova's efforts to

reverse engineer any Antioxidant product" by interrogatory, *see* Muldoon Declaration, Exhibit 21, p. 5, and Defendants' response included the following statements (1) "Prinova reverse engineered NatureSeal AS-1 to develop an anti-browning solution(s)[;]" (2) "[t]he employees who were directly or indirectly involved in Prinova's reverse engineering of the NatureSeal product were Mike Petrushka, Paul Lorusso, and Jayesh Chaudhari[;]" and (3) "Jayesh Chaudhari . . . is the employee who predominantly worked to reverse engineer the NatureSeal product." *Id.*, p. 6-7.

After review of the record, irrespective of whether Prinova's defense as stylized as "reverse engineering" or "independent development" of anti-browning products, issues of material fact exist as to the creation of Defendants' formulas. Therefore, Plaintiff's motion for partial summary judgment is denied.

### B. *Daubert* Motions

As previously stated, the parties have collectively filed three *Daubert* motions, *see generally*, Dkt. Nos. 124, 126, 127. Plaintiff seeks to exclude certain testimony from Defendants' expert Mr. Donald A. Gorowsky. *See generally*, Plaintiff's Memorandum of Law in Support if its Motion to Exclude Certain Opinions of Expert Witnesses Offered by Defendants. Henessey argues: (1) Mr. Gorowsky's opinion on apportionment should be excluded because his opinion merely recites what he believes is the legal standard; (2) Mr. Gorowsky's use of estimates for incremental direct costs lack sufficient reliability; and (3) Mr. Gorowsky's estimates of indirect costs are not the product of reliable principles or methods. *Id.* p. 14-20. Plaintiff also seeks to exclude the opinion of Defendants' expert Dr. Sean F. O'Keefe. *See generally*, *id.* Henessey argues Dr. O'Keefe's opinion should be excluded because it is speculative and not based on sufficient facts. *Id.* p. 20-23.

Similarly, Defendants seek to exclude the opinions of Plaintiff's expert Dr. Deirdre Holcroft.  *See generally*, Memorandum of Law in Support of Defendants' *Daubert* motion to Exclude Opinions and Testimony of Dr. Deirdre Holcroft.  Prinova argues: (1) Dr. Holcroft is not qualified to opine on the research and development of anti-browning products for processing of fresh-cut fruit; (2) Dr. Holcroft's inappropriate factual narratives should be excluded; (3) Dr. Holcroft's opinions as to the parties' states of mind must be stricken; (4) Dr. Holcroft's opinions concerning the purported similarity of tested ingredients and formulations are speculative and unreliable; (5) Dr. Holcroft's opinions concerning the sufficiency of Prinova's research and laboratory processes should be stricken as unreliable and irrelevant; (6) Dr. Holcroft's legal conclusions concerning purported "trade secrets" and alleged misappropriation should be excluded; and (7) Dr. Holcroft's discussions of browning and firmness in fresh-cut fruits and the history of anti-browning are irrelevant and distract from the pertinent issues.  *See id*. p. 4-19. Defendants also seek to exclude certain testimony from Plaintiff's expert Dr. Allyn Strickland. *See generally*, Memorandum of Law in Support of Defendants' Daubert motion to Exclude Certain Testimony of Plaintiff's Damages Expert, Allyn Strickland.  Prinova avers: (1) Dr. Strickland's "expert factual narration" should be precluded under rules 702 and 403; (2) Dr. Strickland's opinion concerning unjust enrichment related to Prinova's sale to Nagase is purely speculative and unreliable and should be precluded; (3) Dr. Strickland's repeated testimony concerning liability should be precluded; (4) Dr. Strickland may not testify concerning Prinova's "deficient" document productions; and (5) Dr. Strickland's failure to apportion damages renders his opinion meaningless in the event Prinova is not held liable on some claims.  *Id*. p. 6-19.

While both Plaintiff and Defendants reference their experts' testimonies in their respective cross-motions for summary judgment and supporting papers, the Court finds issues of

fact remain as to Plaintiff's DTSA misappropriation and breach of contract causes of action, as

well as Defendants' reverse engineering/independent development defense, based on the lay

witness evidence.  In other words, summary judgment relief is not warranted as to the

aforementioned causes of action or defenses, irrespective of the admissibility of the parties

experts, and it is not necessary to reach the parties' *Daubert* motions at this juncture.

Accordingly, the motions to preclude expert testimony are denied without prejudice as to

renewal as motions in limine.  *See*, *e.g.*, *Sec. & Exch. Comm'n v. AT&T, Inc.*, 626 F. Supp. 3d

703, 741 (S.D.N.Y. 2022) (explaining, "[t]he Court's assessment of the lay evidence . . . makes it

unnecessary to resolve the *Daubert* motions at the summary judgment stage" where there was

both "sufficient lay evidence as to each element for the [the plaintiff's] claim to reach a jury" and

"sufficient lay evidence on which a jury could find for the defendants" and denying the parties'

motions "without prejudice to either side's right to move anew under *Daubert* should the case

approach trial."); *Burdick v. Kurilovitch*, No. 5:14-CV-1254 (BKS/TWD), 2017 WL 11500491,

at *8 (N.D.N.Y. June 16, 2017) (denying the defendants' motion to preclude testimony from

plaintiff's expert witness "without prejudice to renewal prior to trial."), *aff'd*, 792 F. App'x 868

(2d Cir. 2019); *Doe No. 1 v. Putnam Cnty.*, No. 7:16-CV-08191, 2020 WL 7027596, at *9

(S.D.N.Y. Nov. 30, 2020) ("With respect to the NYSOAG's motion to preclude the expert

testimony and opinions of Dr. English, where a court determines that consideration of an expert's

testimony in support of or opposition to a motion for summary judgment is unnecessary to the

determination of the summary judgment motion itself, it may deny the motion to preclude

without prejudice.") (citations omitted); *In re Scotts EZ Seed Litig.*, No. 7:12-CV-4727, 2017

WL 3396433, at *15 (S.D.N.Y. Aug. 8, 2017) ("[B]ecause deciding plaintiffs' *Daubert* motion

with respect to Dr. Nelson and Foust is not necessary for deciding the parties' cross-motions for

summary judgment, plaintiffs' motion to preclude the testimony of Dr. Nelson and Foust is denied without prejudice."); *Newell v. Ryobi Techs., Inc.*, No. 1:13-CV-8129, 2015 WL 4617184, at *1 (S.D.N.Y. Aug. 3, 2015) ("Because it is not necessary to decide the motion to preclude" the testimony of the plaintiff's expert witness "in order to resolve the motion for partial summary judgment, the Court denies that motion without prejudice.  If they choose, defendants may reassert the motion to preclude before trial, as a motion in limine, without the necessity of additional briefing."); *Kendall v. Metro-N. Commuter R.R.*, No. 1:12-CV-6015, 2014 WL 1885528, at *4 (S.D.N.Y. May 12, 2014) ("Kendall has raised a genuine question of material fact as to both causation and negligence, even without the expert report of Dr. Morrisey.  Accordingly, it is not necessary to reach the *Daubert* challenge to Dr. Morrisey's expert report in resolving the present motion.").

## C.  Filing Under Seal

Finally, the parties have filed a combined seven motions to file various materials in redacted form or under seal.  *See generally*, Dkt. Nos. 122, 125, 150, 154, 161, 164, 167.   The seven motions remain unopposed.[6]

Employing the inquiry outlined by the Second Circuit's in *Lugosch*, as relevant here, "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches . . . ." *Lugosch*, 435 F.3d at 121.  However, this strong presumption of access must be balanced against competing considerations.  In doing so, courts consider:

---

[6] To be sure, Defendants maintain the information Plaintiff claims to be trade secret and/or confidential does not, in fact, amount to trade secret or confidential information.  Nevertheless, Defendants request leave to file under seal out of an abundance of caution.  *See*, *e.g.*, Dkt. No. 125 at 3.

> the extent of the closure or sealing sought; the potential damage to
> the Parties from disclosure; the significance of the public interest at
> stake; the extent to which the Parties intend to prove their case by
> relying on documents they seek to withhold from public scrutiny;
> and whether the particular matter is integral or tangential to the
> adjudication.

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 1:15-CV-0211, 2024 WL

964592, at *1 (S.D.N.Y. Mar. 5, 2024) (citing *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of

Sec. Dealers, Inc.*, No. 1:07-CV-2014, 2008 WL 199537, at *8 (S.D.N.Y. Jan. 22, 2008)); *see*

*also*, *e.g.*, *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154-55 (S.D.N.Y.

2015) (explaining, "countervailing factors include, among others, the danger of impairing law

enforcement or judicial efficiencies, and the privacy interests of those resisting disclosure, such

as trade secrets and sources of business information that might harm a litigant's competitive

standing.").

Here, the items the parties seek to file under seal or in redacted form contain proprietary

business information, including the businesses' financial information, plans, research and

development information, and other trade secret information.  Therefore, the potential

confidentiality concerns are high.  Additionally, documents such as these are commonly sealed.

*Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999)

("Documents falling into categories commonly sealed are those containing [alleged] trade

secrets, confidential research and development information, marketing plans, revenue

information, pricing information, and the like."); *see also Hypnotic Hats, Ltd. v. Wintermantel*

*Enterprises, LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (same).

Moreover, "[t]he interest in protecting 'business information that might harm a litigant's

competitive standing' has, at a minimum, been recognized by the Supreme Court as potentially

sufficient to defeat the common law presumption."  *Standard Inv. Chartered, Inc.*, 2008 WL

199537, at *8 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  Therefore, irrespective of the materials' status as judicial documents, because issues of fact remain as to whether the information at issue are trade secrets, the presumption of access is outweighed. Accordingly, both Plaintiff's and Defendants' letter motions requesting leave to file the aforementioned materials in redacted form or under seal are granted.

## V.      CONCLUSION

For the foregoing reasons, the claims remaining are (1) Plaintiff's first cause of action for misappropriation of trade secrets under the DTSA; (2) Plaintiff's third cause of action for breach of contract with respect to the 2018 supply agreement; and (3) Plaintiff's seventh cause of action for breach of contract with respect to the mutual confidentiality agreement.

**ACCORDINGLY**, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 128) is **DENIED** in part and **GRANTED** in part as discussed herein; and it is further

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 123) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Daubert motion (Dkt. No. 124) and Defendants' Daubert motions (Dkt. Nos. 126, 127) are **DENIED** without prejudice to renewal in a motion in limine; and it is further

**ORDERED** that Plaintiff's motions to file under seal (Dkt. Nos. 122, 150, 161, 164) and Defendants' motions to file under seal (Dkt. Nos. 125, 154, 167) are **GRANTED**, and the Clerk is directed to file the relevant documents under seal.

**IT IS SO ORDERED.**

Dated:  September 24, 2024
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge